2nd Case in Point Call 2-110-573 John Vinvall v. Richard J. Nakon & Lake Associates Head Hall, on behalf of the Appalachians, Thomas Gooch, on behalf of the Appalachian, Mr. Michael Furlong. Thank you. Mr. Gooch, good morning. Good morning. May it please the Court. I am here on behalf of John Vinvall, seeking reversal of the trial court's dismissal and prejudice of the complaint and the refusal to allow the filing of an amended complaint. At the outset, I would agree that there aren't a whole lot of differences between the proposed amended complaint and the complaint. I think that's one thing I and Appalachia Council would both say. Other than it sets forth the problem more clearly and it takes into account the criminal conviction of the plaintiff to some extent. And on that issue, and I think it's really the central issue to the case, I don't think the illegal act of the plaintiff in this case, the defendant in the criminal case, operates as a bar under Butita or any of the other cases. I don't think that's really the essence of the legal malpractice that we allege the defendant in this case committed. Now, why not? I mean, isn't Butita pretty clear on this point? And why should we ignore well-settled law here? I don't think you should ignore it, ma'am. I think the facts are much different than in Butita. I think here you have a fellow, Mr. Lindbaugh, who is legally blind. And someone comes to him and says, well, you're going to be my executor, you're going to be the executor of my decedent's estate, and you're going to be the trustee under the terms of his last will. And as alleged in the complaint, what does Lindbaugh do? He goes to see an attorney. And we maintain and we believe we can prove with expert testimony that it was a breach of the standard of care to suggest to a man who is legally blind that he could competently administer the estate as an independent executor and then administer a trust with a lot of money in it as a trustee without some very close assistance. And, in fact, we allege in the complaint that Mr. Lindbaugh specifically told the defendant that he needed his constant assistance because he wasn't blind, that he needed to have anything he signed explained to him, that he needed to have everything he did explained to him and verified. We allege further in that complaint that Mr. Kaiser did nothing. Well, let's assume all of that is true. Here's one of the issues that I'm having in looking at the Butita case. The criminal conviction in this case that the plaintiff pled guilty to, tell me if I'm missing something, is that he knowingly obtained unauthorized control over the property. He pled guilty to that. He admitted that he exercised unlawful control over the property. And he did so with knowledge of the facts. If the argument here, if there was such a charge of a negligent misappropriation or negligent conduct that would give rise to a criminal complaint, I might be more inclined to buy and lodge it. For an example, let me give you another example. Your client, the plaintiff, takes money and he goes to a gambling boat. And he loses $100,000. Can you come back with the same facts? He said he needed help, he couldn't do this thing, he had some handicaps there. Therefore, even though he took the money and went to a gambling boat, the attorney is negligent because he didn't supervise him and tell him not to do that. If somebody admits that they knew what they did was wrong, where's the malpractice? He pled guilty to misdemeanor theft of less than $350 as a plea bargain. And he admits that he knowingly, in unauthorized control, he admits this isn't a negligent use, he's admitting he knew it was wrong. So if he knows it's wrong in and of itself, how does the attorney's lack of advice enter into the picture? Because at the time he did the act, he had no knowledge that it was wrong. In fact, he had no knowledge of what he was doing. People put checks in front of him to sign and he signed them. During that same period, as alleged in the complaint, was consulting with the attorney and the attorney never told him, don't sign any more checks. Have him bring the checks to me, I'll review them. And that's the specific request that Lindvall made as alleged in the complaint of Mr. Kaiser. Sounds like a defense to the criminal charge. I'm sorry, sir. Sounds like a defense to the criminal charge that he had no intent or no knowledge that what he was doing was a criminal act. At the time he did those acts, he didn't. But he pled guilty to it. But he did. And that's, I think, one of the problems with a lot of the system. There's a man who is legally blind that's facing a very substantial criminal charge and has offered a misdemeanor plea to theft under $350. When I come back to the same problem, he never should have been there. What was the restitution amount on the misdemeanor? It was $141,000-some-odd. It was a lot of money. There's no question it's a lot of money. I'm sorry. I hate to admit that I wear hearing aids. I hate, secondly, to admit that I forgot to bring them. I hope forgetting is not a sign of something to come in the future. But I'm doing my best to hear you. All right. If you can't hear us, tell us. We'll speak up. And we've got the microphones here. Justin Burke is soft-spoken. Usually.  It's all I've heard. It's all I've heard. Let me ask this, Mr. Gutman. How do you distinguish this case from the whole thing in Butita? I come back to, again, the allegations which are taken as true in the complaint. That he should have been told initially, you can't do this job. You know, I'm sorry. I'm not saying no blind person can do it. But, you know, I can't give you the supervision you're requesting. And he just should not accept the position as an executor or as a trustee. You're saying those facts were not in Butita. Is that what you're saying? Yes, sir. And I think that's really the key to it. If you look at the initial paragraphs of the complaint, beginning paragraph 9 and continuing on through 15, actually through 18, he made very specific requests of Mr. Kaiser. And Mr. Kaiser did not do any of them. Starting with the very first thing when he went to him for advice, he should have said to him, and I believe that I can prove with expert testimony if allowed to proceed to trial, that that's a breach of the standard of care. That an experienced lawyer handling trusted states probate would not suggest to a man who is legally blind that he can be not just an executor but an independent executor, which has him functioning without any supervision whatsoever. And I think that's the key to this case, and I think it should carve out an exception to Butita. I mean, we should be, you know, helping people that have these kinds of handicaps, not putting them in positions that they can't perform on. But didn't he operate his own gift shop? I mean, he operated his own business, did he not? No, the business he operated was a series of concessions for the visually impaired in state buildings. There was that program. But nevertheless, he operated those presumably without an attorney telling him what to do every step of the way. So how does your argument stand up in the face of what he did with his business life apart from his position as executor or trustee? And that might be a factual question to be confronted with at trial. I would answer it at trial by saying I once stood in line in one of those places and watched a guy in front of me telling the fellow that he was giving him a $10 bill when he was giving him a single and took some exception with it. I'm not necessarily sure that he did operate it successfully, but that's a factual question for trial, not to form the basis for a dismissal of the complaint based on a well-plaid fax of the complaint. And I really think the man deserves the opportunity to prove his facts. And this is a short argument, but it's a short issue. And I could find some reason to stand here and bore you for another ten minutes, but I think I've said to you the point. I have one question. Your complaint kind of talks about, at least what I can see, is two different things. One is the investment money, the money that was invested into his firm, and then the other one was some checks that Mr. Larson had signed. Was that all part of the civil judgment against him, all part of the criminal restitution order? It was all together? It was all together. It was everything. It was, you know, and the attorney, speaking of that, the attorney drafted a document that allowed a trustee to take money from the corpus of his own trust. And what kind of practice of law is that? I don't think the issue is the sufficiency of the negligence charge of a complaint. The issue is whether or not it stands up in light of the criminal. Exactly. And again, in conclusion, I go back to what I said at first. It goes back to their initial consultation, what he asked of Mr. Kaiser, what Mr. Kaiser agreed to do and didn't do. Thank you. Thank you. Mr. Furlong. Good morning. May it please the Court. Good morning. Michael Furlong, Court of Defendants, Appellees, NACON and Associates, and Jim Kaiser. We've heard Mr. Gooch concede that there's no issue in this case, that the plaintiff was convicted in connection with the administration of the estate and the trusts. And so that, I think, takes care of the argument that the plaintiff is barred from bringing a malpractice action against the defendants here based on the clear authority cited in the appellate brief. What I understand the plaintiff to be arguing is that the criminal conviction was caused by the negligent advice. Specifically, what I understand Mr. Gooch to be arguing is that a blind person, as a matter of law, can never be an executor of an estate, and that the minute that he came in and allegedly retained the defendants, that he should have been turned away and been told you can't do this as a matter of law. This caused his conviction. The response to that is that the authority cited in the brief say that that's already been foreclosed by the conviction. Specifically, Bantida, the same argument was made with respect to the violation of the Interest Act. The plaintiff said, I talked to an attorney about lending money. The attorney told me that points were not included in the interest calculation for the determination of whether the loan was usurious. I relied on that. I knowingly included points in the interest, excluded the points from the interest calculation under the Interest Act. Turns out it was usurious. I'm going to sue the attorney for that advice. But he throws, his response to that is, uh-huh. In this case, the plaintiff is legally blind. He could not see the documents being placed before him, so he would need to have attorneys arguably explain everything to him. Facts a little bit different than the facts in Bantida. So what's your response to that? Well, I think that Justice Zenoff picked up on the response to that. That's really an argument that a blind person can never be an executor of estate. Well, this blind person admittedly runs four stores. So the argument is really that if a blind person hires an attorney for business dealings, that that attorney's standard of care is to supervise every action the blind person takes in the course of the action that that person has retained the attorney to do. And the plaintiffs haven't cited a case that says that. In fact, they've admitted that Mr. Lindvall runs businesses. And I think it's a salient observation that he probably doesn't have someone checking over every action that he takes. Was there a pleading here that the attorney agreed to supervise every action, every transaction engaged in by the plaintiff? I don't believe that that was alleged in the complaint. It didn't run that far, did it? No. And what's your understanding of what the attorney agreed to do for the plaintiff when he was retained? Well, I think that that's just for the record outside of what we're looking at here because we're talking about emotion and the pleadings. Right. Excuse me. Could you stand in front of the microphone to use it? It'll pick up your voice a little better. Thank you. Sure. But my knowledge of what the retention was was that Mr. Lindvall hired the attorneys to represent him as the executor of the estate. I'm not exactly sure the interplay between the estate and the trusts that may have been envisioned to result from the distribution of the estate assets. And then an election was made that he would independently administer the estate. The pleadings admit that this was, or allege rather, that this was an oral retention agreement. So I don't have the benefit of some sort of engagement letter that I've seen yet. What did his complaint, what did he say in the complaint? Did he speak about what the attorney agreed to do and not do? His complaint alleges that the attorney was informed that he would need assistance in administering the estate. So he does allege that. But it didn't specify the type of assistance or the extent of the assistance? Not to the level of detail that Mr. Gooch is suggesting. Because his complaint is alleging that one of the beneficiaries of the estate obtained control of the estate checkbooks and started writing checks. There's no allegation in the complaint that the attorney agreed to prevent the executor from surrendering control of the estate assets. The complaint alleges that the executor wanted to use the estate assets or the trust assets, the terms used interchangeably, to fund an investment into the plaintiff's business. And that the executor signed a guarantee of that. And so what was the genesis of the criminal complaint against the plaintiff? What did he do that gave rise to the criminal complaint? That's established by reviewing the indictments in the record. There's the indictment for felony theft for taking of $100,000 to $500,000 from the estate. In doing what with it? The indictments don't lay out in detail where the money went. That the estate was deprived of the money permanently by the malpractice plaintiff here. The proposed amended complaint filed, actually appended to the motion for leave to file the amended complaint, admits that the malpractice plaintiff was charged criminally as a result of his actions as the executor and trustee. But you're not aware, it wasn't part of the underlying transaction that gave rise to the complaint, exactly what the check was for or what it was used for? You don't know that? Did you scan that? No, I don't know exactly. In any event, he pled guilty to, it was a fact that he pled guilty and admitted to the criminal complaint, correct? He pled guilty to misdemeanor theft and in that judgment order agreed to restitution in the amount that he's seeking against the malpractice defendants here. So he pled guilty and acknowledged he was guilty? Correct. The argument is, and I believe it's well-founded and supported by prior case law, that once you do that, you're foreclosed from saying you didn't know what you were doing. On that particular charge. Yeah, and the indictment doesn't limit the charge to one particular check. It's a range of funds misappropriated from $100,000 to $500,000, so it would subsume the entire amount and it could have been multiple transactions. But once he pled guilty to that, he's now in the position of asking the court to ignore the public policy of Illinois, which is we don't let convicted criminals benefit from their illegal or immoral acts and seek relief in Illinois courts. You just can't do that. You know, the legal theory upon which Buttino stood was collateral estoppel, and it relied on Meadows and Robbins, which didn't talk about collateral estoppel. If they espouse any legal theory at all, it's maybe unclean hands. So what legal theory are we supposed to put in this opinion if we go your way? I think you can do either. The second district case, McKayla v. Roach, that's an unclean hands theory. It didn't go through the four-pronged collateral estoppel analysis. However, the Buttino court cited to those cases that didn't rely on collateral estoppel to flesh out the fourth element, is the application of collateral estoppel unjust under the circumstances? And Buttino cited to those other non-collateral estoppel cases to say, it's not unjust. We always bar people from seeking to aid, to benefit from their criminal conduct as malpractice plaintiffs. You can't do it. I think you could also say that the controlling issue was determined by the criminal conviction, that it was actually litigated, that it was fully and fairly litigated because the defendant admitted to it. And obviously, it's not unjust to bar the plaintiff from recovery here. So under McKayla, you could rely on unclean hands. Under Buttino, I think you can also rely on collateral estoppel. I don't need to go into the 615 causation argument. I think it's laid out in the briefs because I think the 619 basis based on the criminal conviction is an absolute bar. And we're not hearing anything here or in the briefs that says that anything new can be alleged with respect to the criminal conviction. But I'm not waiving the arguments that the 615 dismissal was incorrect. And I don't think that the plaintiff below ever said there were going to be new facts alleged to show causation with respect to the causation was actually the investment waiver and actually the Rob Larson writing these checks. So I think the dismissal under 615 was proper as well. And the trial court's decision not to let Mr. Hughes file an amended complaint, the trial court had the benefit of looking at the proposed amended complaint. You could tell from its face it didn't correct those deficiencies. So if that's the argument that he's making today, that's reviewed under an abuse of discretion argument. And I do not believe the trial court abused its discretion by denying. Please. Amendment. Opposed. Amendment. Pleading to cure the defective prior pleading. Thank you, Justice. You know, it was going to be the public policy of the state that a criminal defendant cannot profit by his wrongdoing. By suing a lawyer for malpractice. It ought to be the policy of the state that a lawyer should not be able to do this kind of stuff and walk away unscathed. Because none of this would have happened had he simply said to him, I'm not going to do what you ask me to do. I don't have time to do it. Well, there's still the A.R.D.C. And he doesn't walk away unscathed. And he could still have an A.R.D.C. problem. I have no idea. I don't know either. But I do know that it costs him a lot of money. And this lawyer made a lot of money based on this kind of advice. And it's just wrong. If you look at Paragraph 9 of the complaint, it sets forth very clear. I won't read it to you. I'm sure you don't want me to. But Paragraph 9 sets forth very clearly what Linvall asked Kaiser to do and Kaiser's acquiescence. And there is no question. Now, that may very well be a factual dispute at trial. But we've never gotten to trial. We've never had a summary judgment proceeding. This was a dismissal and a pleadings. And that paragraph has to be accepted as true. Now, if he wasn't going to do what he was asked, then he should have said that. But he didn't. And as part of the following paragraphs, he didn't do it. He didn't even have a supervised probate estate open. I mean, this guy was running free and loose. And Kaiser wasn't giving him any advice whatsoever. All of that resulted in a criminal charge. Now, I would say the terror does apply had he not made these requests of Kaiser. But that's the real malpractice. Was Kaiser's first off telling him he could function fully as a trustee and an executor. And secondly, not doing as Kaiser asked him in monitoring all these documents and checking them first and telling him whether or not they were proper and reviewing what he was doing to see if they were proper. There's the malpractice. And even if a jury doesn't buy it, we ought to get the right to present it. Well, are you saying that the malpractice was allowing the money to be invested that was subsequently lost? I mean, isn't it a fact that the money was lost? What if they had made a profit here and that there was money coming back to the beneficiary in some way? So would that make a difference? I think no. I think any attorney who recommends to his client, the trustee, that he borrow money through the trustee's administry, regardless of what happens, is committing a negligent act. I mean, that's just so far out. Nobody in their right mind would do something like that. Okay. Which is not to suggest I don't think he's in the right mind, but I don't think he was paying attention to what he was doing. And then he billed for it. I mean, it's just beyond the scope of comprehension how an attorney could give somebody who can't see this kind of advice and ignore what the fellow asked him to do. And we ought to have a chance to put that in front of a jury with expert testimony and see, rather than have this dismissed on this type of a basis because it's not a material situation. Thank you very much. The court will take the matter under advisement and render a decision in due course.